**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 26, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROBERT JAMES MCCRARY,

    Defendant - Appellant.

No. 21-6047

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:20-CR-00229-J-1)**
_____

Andrew M. Casey, Foshee & Yaffe, Oklahoma City, Oklahoma (Shannon M. McMurray, Tulsa, Oklahoma, with him on briefs), for Defendant-Appellant.

Steven W. Creager, Assistant United States Attorney (Robert J. Troester, Acting United States Attorney and Mark R. Stoneman, Assistant United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.
_____

Before **MORITZ**, **EBEL**, and **KELLY**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

In this direct criminal appeal, Defendant-Appellant Robert McCrary challenges his forty-eight-month prison sentence for possessing fentanyl with the intent to distribute it. Although within the twenty-year statutory maximum for that offense,

McCrary's forty-eight-month sentence was four times higher than the high end of the advisory guideline range. The district court varied upward after concluding McCrary's post-offense rehabilitation did not outweigh the fact that the fentanyl McCrary distributed resulted in another's death. On appeal, McCrary contends that his sentence is both procedurally and substantively unreasonable. We conclude that the appeal waiver to which McCrary agreed precludes our review of his procedural arguments and that his sentence is substantively reasonable. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we, therefore, AFFIRM his sentence.

## I. BACKGROUND

### A. McCrary's offense

In 2012, McCrary began college at Oklahoma State University. There, he and his roommate, Jonathon Messick, both became addicted to Xanax, heroin and fentanyl. In August 2016, Messick and another friend, Gabe Stewart, bought ten fentanyl "gel squares" from McCrary. Several days later, on August 29, 2016, after smoking marijuana and spending the night drinking alcohol at several bars, Messick and Stewart returned home and each ingested one of the fentanyl gel squares they had obtained from McCrary. Soon thereafter, Messick discovered Stewart unresponsive but breathing. Messick called another friend to ask what he should do. That friend advised Messick that Stewart was overdosing and gave Messick several suggestions, including calling 911. Messick instead went to sleep. When Messick awoke the next morning, Stewart was dead. The medical examiner ruled that Stewart had died from

2

the combination of alcohol and fentanyl; "either the ethanol or fentanyl were survivable by themselves, but the combination of the two led to G. Stewart's death."[1] (II R. (sealed) 49 ¶ 11.)

## B. The Government prosecutes McCrary several years later

Almost a year later, Stewart's father contacted the Federal Bureau of Investigation ("FBI"), telling agents that Messick had supplied Stewart with the fentanyl that contributed to his death. The FBI interviewed Messick a year after that, in November 2018. Messick told agents that he and Stewart obtained the fentanyl from McCrary. In September 2020, the United States obtained an indictment against McCrary, charging him with two offenses: 1) conspiring, in 2016, to possess fentanyl with the intent to distribute it, and 2) knowingly and intentionally possessing fentanyl during the month of August 2016 with the intent to distribute it. By this time, McCrary was twenty-six years old, had completed his college degree, had successfully undergone rehabilitation in 2018 to overcome his drug addiction, and was working at a bank in Tulsa to help support his family.

## C. McCrary's guilty plea

Two months after he was indicted, McCrary, in November 2020, entered into a plea agreement with the Government and pled guilty to Count 2. In return, the

---

[1] These background facts are taken from the presentence report ("PSR"). Although McCrary disputes a number of other facts included in the PSR, he did not dispute any of these facts in the district court.

Government agreed to dismiss Count 1.  The plea agreement contained an appeal waiver, discussed in greater detail below.

Before pleading guilty, McCrary acknowledged in writing that the district judge would determine his sentence; the statutory maximum for Count 2 was twenty years in prison; the judge would consider the advisory guideline sentencing range, but could "impose a sentence either above or below that range"; in calculating the advisory sentencing range, "the judge will take into account all conduct, circumstances, and injuries associated with your criminal conduct, whether or not this conduct is formally charged by the government"; and that "there is no limitation placed on the information the judge can consider at the time of sentencing concerning your background, character, and conduct so long as the information is reliable." (I R. 19 ¶¶ 25–27.)  McCrary also acknowledged, both in writing and again verbally at his plea colloquy, that he had read the plea agreement, discussed it with his attorney, and understood all of its terms.

In pleading guilty to Count 2, McCrary admitted: "During the month of August 2016 I knowi[ng]ly possessed what I thought was fentanyl.  During this month I gave some to my former room[m]ate Jonathon Messick.  This all took place in Stillwater OK."  (I R. 23.)

**D. The district court imposes an above-guideline sentence**

At sentencing, the district court determined that McCrary's advisory guideline sentencing range was between six and twelve months in prison.[2] McCrary did not challenge that calculation at sentencing, and does not challenge it now on appeal.

In preparation for sentencing, both parties invoked specific guideline provisions and requested that the sentencing court depart from the advisory guideline range. The district court declined to rely on the guidelines to depart up or down from the advisory range: "even if departure were authorized under the facts of this case, I am exercising my discretion not to depart." (III R. 56.)

Both parties also relied on the sentencing factors set forth in 18 U.S.C. § 3553(a) to argue for a sentence outside the advisory guideline range. Those sentencing factors include, among others, "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need for the sentence . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(1), (a)(2)(A).[3]

---

[2] The PSR originally calculated McCrary's advisory guideline range to be between eighteen and twenty-four months in prison. That was based on the PSR deeming each fentanyl gel square that McCrary distributed to weigh .25 grams. But at sentencing, the district court ruled that the Government had not offered sufficient evidence to prove the weight of those squares. That ruling lowered McCrary's advisory sentencing range to between six and twelve months in prison.

[3] McCrary incorrectly argues that the district court's decision not to rely on specific guideline provisions to <u>depart</u> from the advisory guideline range also restricted the sentencing court's consideration of the § 3553(a) factors for an upward variance. See <u>United States v. McKinnie</u>, 21 F.4th 283, 290 (4th Cir. 2021) (distinguishing between

Based on the § 3553(a) factors, the Government argued for an upward variance to a five-year sentence because Stewart had died from the fentanyl McCrary distributed. McCrary's attorney, on the other hand, sought a downward variance to probation, arguing that there was no reason to put McCrary in prison at all in light of his rehabilitation.

The district court denied McCrary's request for a downward variance. Instead, the district court applied the § 3553(a) factors to vary upward, imposing a forty-eight-month sentence because the six-to-twelve-month advisory guideline range "does not account for the fact that fentanyl is significantly more dangerous than other drugs, nor does it reflect your other drug-related activities and seemingly sincere lack of remorse or appreciation for your contribution to this circumstance," meaning Stewart's death. (III R. 80.) The Court based that last comment on what it "perceive[d]" was McCrary's "lack of sincere acknowledgement of the seriousness of the offense," based on McCrary's assertion at sentencing that "[t]he worst part about this whole situation is seeing the stress it is putting my mom through," rather than Stewart's death. (Id. at 79–80.) The district court acknowledged McCrary's "participation in treatment, your sobriety, and the other arguments advanced by your

_____

departures and variances; ruling that sentencing court considering a variance under the 18 U.S.C. § 3553(a) factors "may . . . consider evidence that a defendant's actions contributed to death or serious injury . . . even if the evidence is insufficient to meet the but-for causation standard required for" a departure under guideline provisions), cert. denied, 142 S. Ct. 2798 (2022). See generally United States v. Kaspereit, 994 F.3d 1202, 1213–14 (10th Cir. 2021) (distinguishing between departures under the sentencing guidelines and variances under 18 U.S.C. § 3553(a)).

6

attorney, which weigh greatly in your favor," but concluded that McCrary's "previous actions put the community at great risk and caused even greater harm; and they require a sentence that not only reflects the seriousness of the offense but one that also protects the public and deters you from future criminal conduct." (Id. at 80–81.)

## II. DISCUSSION

On appeal, McCrary contends that his sentence is both procedurally and substantively unreasonable. "Procedural reasonableness addresses whether the district court incorrectly calculated . . . the Guidelines sentence, treated the Guidelines as mandatory, failed to consider the § 3553(a) factors, relied on clearly erroneous facts, or failed to adequately explain the sentence." United States v. Haggerty, 731 F.3d 1094, 1098 (10th Cir. 2013) (quoting United States v. Huckins, 529 F.3d 1312, 1317 (10th Cir. 2008)). Substantive reasonableness, on the other hand, "'addresses whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a).'" United States v. Craine, 995 F.3d 1139, 1158 (10th Cir. 2021) (quoting United States v. Miller, 978 F.3d 746, 753 (10th Cir. 2020)), cert. denied, 142 S. Ct. 502 (2021). As we explain next, we uphold McCrary's sentence. McCrary, in his plea agreement, waived his appellate challenges to the procedural reasonableness of his sentence and we conclude that his sentence is substantively reasonable.

7

**A. McCrary waived his appellate arguments challenging the procedural reasonableness of his sentence**

McCrary first argues that his sentence is procedurally unreasonable because, in determining his sentence, the district court relied on clearly erroneous facts, failed to explain its sentence adequately, and erred in responding to McCrary's objections to some of the facts contained in the PSR. The Government counters that the appeal waiver in McCrary's plea agreement precludes this court from reviewing these procedural arguments; the Government, therefore, asks this Court to enforce the appeal waiver.

In relevant part, the appeal waiver in McCrary's plea agreement provided:

> 12. Defendant understands that the Court will consider the factors set forth in 18 U.S.C. § 3553(a) in determining Defendant's sentence. Defendant also understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum for the offense(s) to which Defendant is pleading guilty. Defendant further understands that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 give Defendant the right to appeal the judgment and sentence imposed by the Court. Acknowledging all of this, and in exchange for the promises and concessions made by the United States in this Plea Agreement, Defendant knowingly and voluntarily waives the following rights:
>
> . . . .
>
> b. Except as stated immediately below, Defendant waives the right to appeal Defendant's sentence as imposed by the Court, including any restitution, and the manner in which the sentence is determined. If the sentence is above the advisory Guidelines range determined by the Court to apply to Defendant's case, this waiver does not include Defendant's right to appeal specifically the substantive reasonableness of Defendant's sentence.

(I R. 32 ¶ 12 (emphasis added).) As part of the plea agreement, the Government similarly "waive[d] its right under 18 U.S.C. § 3742 to appeal the sentence imposed

8

by the Court and the manner in which the sentence was determined," but retained the right to challenge on appeal "the substantive reasonableness" of a below-guideline sentence.  (Id. 33 ¶ 13.)

In deciding whether to enforce this appeal waiver to preclude review of McCrary's procedural-reasonableness arguments, we apply the following three-part analysis.  See United States v. Loumoli, 13 F.4th 1006, 1007–08 (10th Cir. 2021) (applying United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam)).

**1. The appellate dispute falls within the scope of the waiver**

First, this Court considers whether McCrary's appellate arguments challenging the procedural reasonableness of his sentence "fall[] within the scope of the waiver of appellate rights" included in his plea agreement.  Id. at 1007 (quoting Hahn, 359 F.3d at 1325).  In making this determination, we "'strictly construe' the waiver and read any ambiguities 'against the Government and in favor of a defendant's appellate rights.'"  Id. at 1008 (quoting Hahn, 359 F.3d at 1325).

McCrary's appellate procedural arguments clearly challenge the "manner in which [his] sentence [wa]s determined" and, therefore, fall within the scope of the appeal waiver to which he agreed.  This conclusion is based on a straightforward reading of the clear language of the waiver.

Our conclusion is further bolstered by a line of unpublished Tenth Circuit decisions determining that this same appeal-waiver language precluded review of similar arguments challenging the procedural reasonableness of a sentence.  See

9

United States v. Goldberg, 850 F. App'x 610, 613–14 (10th Cir. 2021) (unpublished)

(stating that same appeal-waiver language encompassed arguments challenging

sentence's procedural reasonableness, including "whether the district court

incorrectly calculated the Guidelines sentence, treated the Guidelines as mandatory,

failed to consider the § 3553(a) factors, relied on clearly erroneous facts, or failed to

adequately explain the sentence" (quoting Haggerty, 731 F.3d at 1098))[4]; United

States v. Gomez, 824 F. App'x 577, 579 (10th Cir. 2020) (unpublished) (same); see

also United States v. Phillips, No. 21-6108, 2022 WL 500446, at *1–2 (10th Cir.

Feb. 18, 2022) (per curiam) (holding same appeal-waiver language precluded review

of defendant's challenge to how his sentence was calculated under the guidelines);

United States v. Yarclay, 861 F. App'x 246, 248–50 & 248 n.1 (10th Cir. 2021)

(unpublished) (ruling same appeal-waiver language encompassed defendant's

challenge to application of an enhancement to calculate his sentence under the

guidelines); United States v. Foster, 758 F. App'x 668, 669–70 (10th Cir. 2019)

(unpublished) (same); United States v. Kutz, 702 F. App'x 661, 663–64, 666–67

---

[4] McCrary contends that, unlike this case, Goldberg did not address a specific
challenge to the facts on which the court based the challenged sentence.  But
Goldberg's statement—that the same appeal-waiver language at issue here
"encompasses" arguments challenging sentence's procedural reasonableness,
including "whether the district court incorrectly calculated the Guidelines sentence,
treated the Guidelines as mandatory, failed to consider the § 3553(a) factors, relied
on clearly erroneous facts, or failed to adequately explain the sentence", 850 F.
App'x at 614 (quoting Haggerty, 731 F.3d at 1098))—is sufficient to apply to
McCrary's current procedural arguments challenging the facts on which the court
relied to sentence him.

(10th Cir. 2017) (unpublished) (ruling same appeal-waiver language encompassed challenge to the calculation of the advisory guideline sentencing range).[5]

In concluding that McCrary's procedural arguments fall within the scope of his appeal waiver, we reject his argument that the <u>substantive</u> reasonableness of his above-guideline sentence, which the appeal waiver permits him to challenge on appeal, is inextricably linked to at least one of his procedural arguments—that the district court relied on clearly erroneous facts included in the PSR to sentence McCrary. <u>Yarclay</u> rejected a similar argument that, because the line between substantive and procedural reasonableness is blurred, this court should review the <u>manner</u> in which the sentencing court calculated the defendant's guideline range as part of our review for substantive reasonableness. <u>Yarclay</u>, 861 F. App'x at 248–49. In rejecting that argument, <u>Yarclay</u> noted that "[w]e need not divorce the two"— procedural and substantive reasonableness—"because Defendant did so himself when he agreed to the waiver." <u>Id.</u> at 249. That appeal waiver distinguished between appealable substantive reasonableness arguments challenging an above-guideline sentence and unappealable challenges to the "manner in which the sentence is determined." <u>Id.</u> <u>Yarclay</u> held that the defendant's challenge to the way the sentencing court calculated his guideline range "falls within the scope of the appellate waiver." <u>Id.</u> We find <u>Yarclay</u>'s reasoning persuasive here.

---

[5] Although these unpublished decisions do not bind us, we deem their reasoning persuasive. <u>See</u> <u>Banner Bank v. Smith</u>, 30 F.4th 1232, 1240 n.4 (10th Cir. 2022).

**2. McCrary knowingly and voluntarily waived his appeal rights**

The second factor this Court considers in deciding whether to enforce

McCrary's appeal waiver is "whether [he] knowingly and voluntarily waived his

appellate rights." Loumoli, 13 F.4th at 1007 (quoting Hahn, 359 F.3d at 1325).

Here, the appeal waiver was clearly set forth in the plea agreement and the district

court further addressed the waiver during McCrary's plea colloquy in open court.

McCrary, therefore, knowingly waived his appeal rights.

Arguing to the contrary, McCrary points out—accurately—that no one

explained to him on the record "the difference between procedural and substantive

reasonableness." (Aplt. Reply Br. at 6.)  He further contends that the distinction

between procedural and substantive reasonableness is so "complicated . . . that

extremely large portions of the criminal bar may not understand the nuances." (Id.)

The Tenth Circuit, in other cases, has noted that "there is . . . some unavoidable

overlap" between substantive and procedural reasonableness. United States v.

Barnes, 890 F.3d 910, 917 (10th Cir. 2018).  Nonetheless, here the language of the

appeal waiver itself draws a clear distinction between appellate challenges to "the

manner in which the sentence is determined," which are waived, and the "substantive

reasonableness" of an above-guideline sentence, which can be appealed.  (I R. 32

¶ 12(b).)  Furthermore, McCrary, both in writing and verbally during his plea

colloquy, indicated that he had read the plea agreement, discussed it with his

attorney, and understood all of its terms.  McCray, therefore, knowingly waived his

right to appeal "the manner in which his sentence was determined" (id.).

McCrary does not assert that his appeal waiver was involuntary. Nor have we gleaned from the record any reason to think it was involuntary.

Moreover, "[w]hen determining whether a waiver of appellate rights is knowing and voluntary," this court "especially look[s] to two factors. First, we examine whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily." Hahn, 359 F.3d at 1325 (citing United States v. Elliott, 264 F.3d 1171, 1174 n.1 (10th Cir. 2001)). Here, McCrary's plea agreement does state that he "knowingly and voluntarily waive[d]" his appeal rights as stated in the agreement. (I R. 32 ¶ 12.) Second, this court "look[s] for an adequate Federal Rule of Criminal Procedure 11 colloquy." Hahn, 359 F.3d at 1325. McCrary does not argue, and there does not appear to be any reason to conclude, that McCrary's plea colloquy was somehow deficient.

McCrary, then, has not shown that his appeal waiver was either unknowing or involuntary. See id. at 1329 (noting it is the defendant's burden to show his appeal waiver was not knowing and voluntary).

### 3. Enforcing McCrary's appeal waiver will not result in a miscarriage of justice

Because "a defendant who waives his right to appeal does not subject himself to being sentenced at the whim of the district court," United States v. Black, 201 F.3d 1296, 1301 (10th Cir. 2000) (quoting United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992)), the third factor we consider is "whether enforcing the waiver would result in a miscarriage of justice," Loumoli, 13 F.4th at 1007 (quoting Hahn,

13

359 F.3d at 1325). "[A]n appellate waiver does not result in a miscarriage of justice unless enforcement would result in one of . . . four situations": "'[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.'" Hahn, 359 F.3d at 1327 (quoting Elliott, 264 F.3d at 1173). McCrary points to the fourth situation, asserting his appeal waiver is "otherwise unlawful." "[T]o meet the fourth . . . factor (i.e., enforcement of the waiver is otherwise unlawful) the alleged error must satisfy the fourth prong of the . . . plain error test"—that is, "'the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" Id. at 1329 (quoting United States v. Olano, 507 U.S. 725, 732 (1993), in parenthetical). This inquiry, however, "is not whether the sentence is unlawful"—although the sentence here is not unlawful—but instead the relevant inquiry is "whether the waiver itself is unlawful because of some procedural error or because no waiver is possible." United States v. Holzer, 32 F.4th 875, 887 (10th Cir. 2022) (quoting United States v. Sandoval, 477 F.3d 1204, 1208 (10th Cir. 2007)).

McCrary asserts, without citation, that a district court's reliance on the erroneous fact that there was a victim of his drug distribution "is pivotal to fairness of judicial proceedings," thus making his sentence unlawful. (Aplt. Reply Br. at 8.) But again that is not the relevant inquiry. See Holzer, 32 F.4th at 887. Furthermore, this court has previously recognized that a defendant can waive an appellate

14

challenge to the PSR's facts relied upon by the sentencing court.  E.g., Goldberg,

850 F. App'x at 613–14; Gomez, 824 F. App'x at 579.

### 4. Conclusion: The Court will enforce the appeal waiver

Because the three Hahn requirements are met here, we will enforce the appeal

waiver to which McCrary agreed and decline to address his arguments challenging

the procedural reasonableness of his sentence.[6]

---

[6] Were we to address the merits of McCrary's procedural arguments, however, they would likely not warrant relief.  The district court adequately explained why it imposed the forty-eight-month above-guideline sentence.  See United States v. Mendoza, 543 F.3d 1186, 1191–92 (10th Cir. 2008) (discussing explanation required for imposing a sentence outside the advisory guideline range).  Further, the court did not err, at least not harmfully so, in its treatment of McCrary's objections to specific facts included in the PSR.  Most assuredly, the district court did not err in considering the fact that Stewart died after ingesting fentanyl that McCrary distributed.  It is accurate, as McCrary asserts, that the PSR, in calculating McCrary's offense level, noted that there were no "identifiable victims" and that no specific victim-related adjustment applied to increase McCrary's offense level.  (II R. 55 ¶ 25; 36 ¶ 31.)  The PSR also indicated that restitution was not applicable to this case.  But those determinations do not support McCrary's further assertion that the sentencing court could not consider the fact that Stewart died after ingesting fentanyl distributed by McCrary.  As an initial matter, the PSR contained a number of facts—to which McCrary did not object—indicating that Stewart died from fentanyl distributed by McCrary.  McCrary did not dispute that fact in the district court.  Furthermore, the PSR itself recognized that fact and suggested that that fact might be a reason for the sentencing court to impose a sentence above the advisory guideline range.  Moreover, Congress has provided that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661; see also Pepper v. United States, 562 U.S. 476, 488–89 (2011).  McCrary, then, is incorrect that the district court, in sentencing McCrary, could not consider the fact that Stewart died from fentanyl that McCrary distributed.  See McKinnie, 21 F.4th at 290–91 (4th Cir.) (relying on 18 U.S.C. § 3661 and the § 3553(a) factors to hold that sentencing court could consider fact that fentanyl the defendant was convicted of distributing resulted in another's death, whether or not the court could further find that the fentanyl was

15

## II. McCrary's above-guideline sentence is substantively reasonable

Next, McCrary argues that his sentence is substantively unreasonable. We consider the merits of that argument because McCrary's appeal waiver expressly permits him to appeal the substantive reasonableness of his sentence when, as here, "the sentence is above the advisory Guidelines range." (I R. 32 ¶ 12(b).) But we reject on the merits McCrary's argument that his forty-eight-month sentence is substantively unreasonable.

### A. Standard of review

In deciding whether a sentence is substantively unreasonable, we review the length of the sentence for an abuse of discretion. See United States v. Williams, 10 F.4th 965, 977 (10th Cir. 2021). "In doing so, we ask 'whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a).'" Id. (quoting United States v. Carter, 941 F.3d 954, 960–61 (10th Cir. 2019)). We will reverse only if the sentence imposed was "arbitrary, capricious, whimsical, or manifestly unreasonable," or if the district court "exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand." United States v. DeRusse, 859 F.3d 1232, 1236 (10th Cir. 2017) (internal quotation marks omitted). "We do not reweigh the [§ 3553] sentencing

_____

the but-for cause of death, citing First and Fifth Circuit cases reaching similar conclusions); United States v. Heindenstrom, 946 F.3d 57, 63–64 (1st Cir. 2019) (relying on 18 U.S.C. §§ 3553(a) and 3661 to conclude that sentencing court can consider fact that fentanyl that the defendant was convicted of distributing resulted in someone's death).

factors but instead ask whether the sentence fell within the range of 'rationally available choices that facts and the law at issue can fairly support.'" United States v. Blair, 933 F.3d 1271, 1274 (10th Cir. 2019) (quoting United States v. Martinez, 610 F.3d 1216, 1227 (10th Cir. 2010)). "[B]oth the Supreme Court and this court have made clear that it is not the job of an appellate court to review de novo the balance struck by a district court among the factors set out in § 3553(a)." United States v. Sells, 541 F.3d 1227, 1239 (10th Cir. 2008) (citing, e.g., Gall v. United States, 552 U.S. 38, 51–52 (2007)). "[A]s long as the balance struck by the district court among the factors set out in § 3553(a) is not arbitrary, capricious, or manifestly unreasonable, we must defer to that decision even if we would not have struck the same balance in the first instance." Id.

Here, the district court varied upward from the advisory guideline range to impose a sentence four times as long as the high end of that range. In reviewing that sentence, this court will "'take the degree of variance into account,'" but "will not 'use the percentage of the variance as the standard for determining the strength of the justifications required.'" Kaspereit, 994 F.3d at 1214 (quoting Gall, 552 U.S at 47) (alteration omitted).

**B. McCrary's forty-eight-month sentence is not substantively unreasonable**

In light of our highly deferential standard for reviewing the length of McCrary's sentence, we cannot conclude it is substantively unreasonable. The district court clearly explained its reasons for imposing the forty-eight-month

sentence. See United States v. Lawless, 979 F.3d 849, 855 (10th Cir. 2020) ("A sentence is more likely to be within the bounds of reasonable choice when the court has provided a cogent and reasonable explanation for it." (internal quotation marks omitted)). And the court did so in light of the § 3553(a) sentencing factors.

In particular, the district court chose to weigh the fact that McCrary's offense involved a dangerous illicit drug that resulted in Stewart's death heavier than the court weighed McCrary's post-offense rehabilitation. See generally 18 U.S.C. § 3553(a)(1) (directing the sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant). McCrary disagrees with that weighing. While another sentencing court might have reasonably imposed a shorter sentence, we cannot say that the forty-eight-month above-guideline sentence the district court imposed was arbitrary, unreasonable, or outside the range of permissible choice. See United States v. Lake, 613 F. App'x 700, 702, 703–04 (10th Cir. 2015) (unpublished) (upholding as substantively reasonable fifty-nine-month sentence for conspiring to possess heroin with the intent to distribute it, an upward variance from the advisory guideline range of zero to six months in prison, based in part on fact that heroin defendant distributed resulted in or at least contributed to another's death and the sentencing court's determination that that death outweighed the defendant's post-offense rehabilitation efforts).

McCrary argues that the district court erred in varying upward because of the danger of fentanyl, when the guideline range already reflected those dangers. But McCrary's sentence fell within the statutory-maximum twenty years that Congress

18

set for his offense of conviction.  See 21 U.S.C. § 841(a)(1), (b)(1)(C).  Moreover,

we are further persuaded by the fact that other circuits have upheld as substantively

reasonable upward-variant sentences based on the dangerousness of the fentanyl that

a defendant distributed.[7]

McCrary also disagrees with the district court's observation at sentencing that

he was more concerned about the stress his conduct placed on his family than he was

---

[7] See McKinnie, 21 F.4th at 286, 288, 292–94 (4th Cir.) (upholding as substantively reasonable 120-month prison sentence, up from advisory range of twenty-one to twenty-seven months, where someone died from fentanyl defendant distributed); Heindenstrom, 946 F.3d at 59–61, 64–66 (1st Cir.) (upholding as substantively reasonable sixty-month prison sentence, up from guideline range of eight to fourteen months, where someone died from fentanyl the defendant distributed); see also United States v. James, No. 20-12459, 2021 WL 2909729, at *1–4 (11th Cir. July 12, 2021) (unpublished) (per curiam) (upholding as substantively reasonable sixty-month prison sentence, up from guideline range of ten to sixteen months, where defendant sold fentanyl to undercover officer that came from the same batch of fentanyl that previously almost killed another buyer); United States v. Lewis, 819 F. App'x 718, 719–22 (11th Cir. 2020) (unpublished) (per curiam) (upholding as substantively reasonable seventy-two-month prison sentence for conspiring to distribute fentanyl, up from guideline range of forty-six to fifty-seven months, where series of three of defendant's distributees' customers died); United States v. Drake, 800 F. App'x 415, 416–18 (6th Cir. 2020) (unpublished) (upholding as substantively reasonable 300-month prison sentence for distribution of fentanyl resulting in death, when guideline range was 240 months, where defendant distributed fentanyl to one who then redistributed it to another who died from the drug); United States v. Margenat-Castro, 754 F. App'x 879, 880–82, 885–86 (11th Cir. 2018) (unpublished) (per curiam) (upholding as substantively reasonable 240-month prison sentence, up from guideline range of 168 to 210 months, for conspiring to distribute heroin cut with fentanyl, where distributed drugs contributed to several deaths); cf. United States v. Robinson, 892 F.3d 209, 211, 215–17 (6th Cir. 2018) (upholding as substantively reasonable 118-month prison sentence, up from guideline range of sixty-three to seventy-months, based in part on "the harm caused by the opioid epidemic in Ohio" generally).

remorseful for Stewart's death. But the district court was in the best position to judge McCrary's sincerity and remorse.

McCrary also pointed out that he accepted responsibility by pleading guilty and cooperating with the Government's investigation. The district court did not discount those facts, but concluded they did not outweigh the fact that McCrary's conduct resulted in Stewart's death. Although McCrary disagrees with the district court's weighing of these factors, that is not sufficient to warrant relief from his sentence.[8]

### III. CONCLUSION

McCrary, through the appeal waiver in his plea agreement, waived his appellate arguments challenging the procedural reasonableness of his sentence. Furthermore, McCrary has not shown that the sentencing court abused its discretion in imposing the forty-eight-month above-guideline sentence. We, therefore, AFFIRM McCrary's sentence, concluding it is substantively reasonable.

---

[8] To the extent McCrary incorporates his procedural unreasonableness arguments into his substantive reasonableness analysis, McCrary has waived his procedural arguments.